34863. GARDEN OF EDEN, INC. v. EASTERN SAVINGS BANK et al.
34864. EASTERN SAVINGS BANK v. GARDEN OF EDEN, INC. et al.

HALL, Justice.

This lawsuit was brought by Garden of Eden, Inc. against Eastern Savings Bank and others to enforce an alleged three-year lease of space in an apartment complex in which Garden operates a nursery school. On motions for summary judgment the trial court found that no lease existed, but that Eastern, the property owner, was not entitled to summary judgment on Garden's count two which alleged misrepresentation. Both parties appeal.

Garden had previously occupied these premises, but its lease was terminated by letter when Eastern Bank acquired the complex by foreclosure. There is no contention that this termination was ineffective. Garden remained in occupancy, however, with the acquiescence of Eastern's managing agent, Management Enterprises, Inc. Mr. Kaplan, the principal in Garden, and Mr. Young, with Management, negotiated concerning a new lease to be executed between Garden and Eastern. In a nutshell, Garden claims that these negotiations resulted in a lease. Eastern claims that they did not, and that at all times Garden was informed that final acceptance of the proposed lease would have to come from Eastern and that Young was empowered to do only preliminary negotiation for Eastern's consideration.

After some negotiation, Garden's attorney drew a proposed lease. He provided three signature lines: One for Garden as "tenant"; one for Management Enterprises, Inc. as "agent"; and one for Eastern Bank, as "lessor."

Mr. Kaplan acknowledged in his deposition that although in earlier negotiations he had formed the

impression that Young had the power to speak for Eastern and perhaps even to sign the lease for Eastern, nonetheless by the time he affixed his own signature to the lease for Garden (and he was the first to sign) he knew that he had no lease unless Eastern subsequently signed.

Garden concedes that Eastern never signed the lease. Garden also concedes that the Statute of Frauds would seem to nullify an alleged unwritten contract on these facts. Garden argues, however, that this "contract" is enforceable by it against Eastern because Mr. Kaplan thought he had reached a meeting of the minds with Mr. Young, and thought that Young was a general agent authorized to enter such contracts for Eastern. Subsequently, Management maintained the property and began cashing checks which Kaplan tendered as rent, and Garden argues that this constituted part performance removing this contract from the Statute of Frauds. See Code Ann. §§ 20-401, 20-402 (3). Eastern asserts that the checks were due as payment for Garden's tenancy-at-will while no lease was in effect.

1. The evidence showed that after Kaplan signed as tenant, not even an authorized signature by Management for itself as agent had been affixed to the document, (and certainly no signature by anyone at all for Eastern.) Mr. Young testified on his deposition that the young woman who acted as courier in picking up the document from Mr. Kaplan had purportedly signed it for Management, but that this act was totally unauthorized.

Even assuming, however, that hers had been an authorized signature *for Management* on the "agent" line of the document, this would still not create for Garden the lease contract it seeks. No one ever purported to sign this contract for the lessor, Eastern.

One seeking to hold the principal liable for the undertaking of his agent on a lease for over a year must show that the agent had written authority to act for the principal. Code § 4-105; *Deal v. Dickson,* 232 Ga. 885, 886 (209 SE2d 214) (1974). See *Dover v. Burns,* 186 Ga. 19, 20 (196 SE 785) (1938); *Baxley Hardware Co. v. Morris,* 165 Ga. 359 (140 SE 869) (1927); *Byrd v. Piha,* 165 Ga. 397(2) (141 SE 48) (1927); *Nalley v. Whitaker,* 102 Ga. App. 230 (115 SE2d 790) (1960). Nothing said in *Whiteway Neon-*

*Ad, Inc. v. Opportunities Industrialization Center of Atlanta, Inc.,* 243 Ga. 114 (252 SE2d 604) (1979) is contrary to this rule. *Whiteway* concerned sealed instruments.

It is uncontested that Young's contract with Eastern was oral. Young and Eastern denied that Young had any authority to accept for Eastern any commercial lease contracts. Mr. Kaplan admitted that he never specifically asked the extent of Mr. Young's authority. Mr. Young never signed the contract in any capacity.

The contention that a lease contract was created here by Young as agent of Eastern is without merit.

2. The claim of part performance is similarly defective. The ambiguous payment and acceptance of $600, when this amount was due as payment of a reasonable sum for Garden's occupancy of the premises as tenant-at-will, is not adequate part performance of the asserted lease. The mere fact that part performance under a lease might have been attempted by Garden, by one or several acts of paying $600, which occasioned no loss to it and no benefit to Eastern does not serve to take this transaction outside the Statute of Frauds. *Alodex Corp. v. Brawner,* 134 Ga. App. 630 (215 SE2d 527) (1975); *Forest Services, Inc. v. Fidelity & Cas. Co. of N. Y.,* 120 Ga. App. 600 (171 SE2d 743) (1969).

*Blanton v. Mosely,* 133 Ga. App. 144 (210 SE2d 368) (1974); *Shell Petroleum Corp. v. Jackson,* 47 Ga. App. 667 (171 SE 171) (1933) and *Cooper v. G. E. Const. Co.,* 116 Ga. App. 690 (158 SE2d 305) (1967), argued by Garden are factually distinguishable. Those cases all involved part performance of a substantial nature. The statute is explicit that the part performance must be "such part performance of the contract as would render it *a fraud of the party refusing to comply,"* (Eastern) if the court did not order Eastern to honor the proposed lease. (Code Ann. § 20-402 (3). (Emphasis supplied.))

Garden has failed to show such part performance of this alleged lease agreement as to bring it within an exception to the Statute of Frauds.

There was simply no lease on these facts. Accord, *Siler v. Martin,* 243 Ga. 550 (1979); *Rotruck v. Grandma's Biscuits,* 243 Ga. 512 (1979); *Smith v. Top Dollar Stores,* 129 Ga. App. 60 (198 SE2d 690) (1973). The trial court did

not err in granting summary judgment to the defendants Eastern and Northmoor on Count 1 of Garden's complaint.

3. Similarly, the trial court did not err in granting summary judgment for the defendants Northmoor, Management and Harman on Count 3 of Garden's complaint for alleged tortious interference with Garden's contract rights. There is no support in the record for this claim.

4. In the cross appeal (No. 34864) Eastern raises three enumerations of error arguing that the trial court erred in refusing to grant its motion for summary judgment on Garden's Count 2, which claimed damages for misrepresentation by Management on behalf of Eastern. The trial court correctly denied summary judgment, as fact issues remain for decision. See Code Ann. §§ 105-302, 37-211, 37-212, 4-311; *Brown v. Techdata Corp. Inc.*, 238 Ga. 622, 625 (234 SE2d 787) (1977); *Travel Wholesale, Inc. v. Herren,* 132 Ga. App. 560, 561 (208 SE2d 571) (1974). Each of the three enumerations of error is without merit.

*Judgments affirmed. All the Justices concur, except Hill, J., who concurs in the judgment only.*

ARGUED MAY 15, 1979 — DECIDED JUNE 20, 1979 — REHEARING DENIED JULY 18, 1979 IN CASE NO. 34863.

*Turem & Kirschner, Andrew R. Kirschner,* for appellant (Case No. 34863).

*Morris, O'Brien, Manning & Brown, Glenn Delk, Joseph R. Manning, Peterson & Young, Fred T. Isaf,* for appellees (Case No. 34863).

*Donald E. O'Brien, Glenn G. Delk, Joseph R. Manning,* for appellant (Case No. 34864).

*Andrew Kirschner, Fred Isaf,* for appellees (Case No. 34864).

